```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE

EDWARD KNIGHT, CHARLES MILLER-BEY,   :
EDDIE MCBRIDE and LEONARD RILEY,     :
JR.,                                 :
                                     :
         Plaintiffs,                 :
                                     : Civil Action No. 01-005-JJF
    v.                               :
                                     :
INTERNATIONAL LONGSHOREMEN'S         :
ASSOCIATION,                         :
                                     :
         Defendant.                  :
```

Michael J. Goldberg, Esquire, Cherry Hill, New Jersey.
Perry F. Goldlust, Esquire, Wilmington, Delaware.

Attorneys for Plaintiffs.

John P. Sheridan, Esquire of MARRINAN & MAZZOLA MARDON, P.C., New
York, New York.
Stephen B. Potter, Esquire of POTTER CARMINE & ASSOCIATES, P.A.,
Wilmington, Delaware.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

July 30, 2009
Wilmington, Delaware

Farnan, District Judge

This is an action brought pursuant to the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401-531, against Defendant International Longshoremen's Association ("ILA"). Pending before the Court are Defendant ILA's Motion For Summary Judgment As To Liability On Plaintiffs' Remaining Claim (D.I. 138) and Plaintiffs' Cross-Motion For Summary Judgment And For An Order Requiring The ILA To Amend Article XXVII Of The ILA Constitution And For An Award Of Punitive Damages (D.I. 145). For the reasons discussed, Plaintiffs' Motion will be granted in part and Defendant's Motion will be denied.

Also before the Court are the parties' status reports focusing on the issue of whether this Court should hold a hearing on damages. For the reasons discussed, the Court will hold a damages hearing.

## I. BACKGROUND

The Plaintiffs are all members of the ILA, a union of maritime workers, and a group called the Workers' Coalition. According to Plaintiffs, the purpose of the Workers' Coalition is to foster positive change in the ILA. Plaintiffs Edward Knight and Charles Miller-Bey belong to Local 1694 of the ILA. Mr. Knight was financial secretary of Local 1694 before the events at issue in this lawsuit. At a meeting of Local 1694 in early 2000, Mr. Knight made a successful motion to have the local contribute $1500 to host a Workers' Coalition meeting. Promotional

materials for the meeting were distributed. At some point, Adam McBride, the Executive Director of the Diamond State Port Corporation, an instrumentality of the State of Delaware that allegedly employed ILA members, became aware of the meeting and gave a $500 contribution to Mr. Knight to help fund the meeting.[1] Mr. Adam McBride also was scheduled to speak at the meeting.

After speaking with ILA Vice President James H. Paylor, Mr. Adam McBride decided not to speak to the Workers' Coalition, but did not withdraw his financial support. Blaming Mr. Paylor for the withdrawal and believing that Mr. Paylor had stated that the Workers' Coalition was being investigated for communist affiliation, Mr. Knight and Mr. Miller-Bey brought intra-union charges accusing Mr. Paylor of interfering with Local 1694's autonomy and causing harm and division among the ILA.

In response, Mr. Paylor filed charges against Mr. Miller-Bey and Mr. Knight, accusing them of filing frivolous charges that were "detrimental to the welfare of the I.L.A." and of violating several provisions of the ILA constitution. Plaintiffs requested additional information on the charges against them, and it is undisputed that this request was denied. The charges against Mr. Miller-Bey and Mr. Knight were heard in August, 2000. The Committee that heard the charges ("Committee") found that Mr.

---

[1] Hereinafter, the Court will refer to Adam McBride as "Mr. Adam McBride" to distinguish him from plaintiff Eddie McBride.

Adam McBride had been misled by Mr. Knight into believing that
the Workers' Coalition meeting was endorsed by the ILA.    The
Committee also found that Mr. Adam McBride's donation and Mr.
Knight's acceptance of the donation violated the Labor-Management
Relations Act ("LMRA") provisions proscribing gifts from
employers to employee representatives.    The Committee "noted"
that the Workers' Coalition should not have used the ILA logo or
the Local 1694 name in combination with the solicitation of funds
and found that in doing so, Mr. Knight engaged in conduct
detrimental to the union as prohibited by the ILA Constitution.
Accordingly, the Committee recommended that the executive council
suspend Mr. Knight from serving as the local's financial
secretary and that he be fined $500.    In October, the executive
council followed this recommendation.    Mr. Paylor was found not
guilty of any wrongful conduct, and, with respect to Mr. Miller-
Bey, the Committee recommended no discipline.

     Shortly after these events, in January 2001, Mr. Knight and
the three other plaintiffs filed this lawsuit against the ILA
alleging: (1) violation of Plaintiffs' rights to procedural
safeguards pursuant to section 101(a)(5) of the LMRDA, 29 U.S.C.
§ 411(a)(5);[2] (2) violation of Plaintiffs' right to free speech

---

[2] Section 411(a)(5) provides that "[n]o member of any labor
organization may be fined, suspended, expelled, or otherwise
disciplined except for nonpayment of dues by such organization or
by any officer thereof unless such member has been (A) served
with written specific charges; (B) given a reasonable time to

3

under the LMRDA, pursuant to sections 101(a)(2) and 609, 29 U.S.C §§ 411(a)(2)[3] and 529;[4] (3) a challenge to Articles XVIII and XXVII of the ILA Constitution as overbroad and vague, and pursuant to section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2); and (4) violation of LMDRA section 105, 29 U.S.C. § 415.[5] (D.I. 23.) In greater detail, with respect to the section 101(a)(5) claim, Plaintiffs Knight and Miller urged (1) that the charges against them were not adequately stated, (2) that they were not given adequate time to prepare their defenses, (3) that

---

prepare his defense; (C) afforded a full and fair hearing."

[3] Section 411(a)(2) provides that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

[4] Section 529 provides that "[i]t shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."

[5] Section 415 provides that "[e]very labor organization shall inform its members concerning the provisions of this Act [29 USCS §§ 401 et seq.]."

the hearing committee was biased, and (4) that they were improperly prohibited from recording the hearing on tape. As to the section 101(a)(2) claim, Plaintiffs maintained that (1) the activities for which Mr. Knight and Mr. Miller-Bey were charged (and for which Mr. Knight was punished) are protected by the freedom of speech and assembly provisions of the LMRDA, and (2) that Articles XXVII and XXVIII, § 1(b) of the ILA Constitution, which prohibit the "illegal use" of the ILA name and "conduct detrimental to the welfare of the ILA" respectively, are vague and overbroad. Finally, as to the section 105 claim, Plaintiffs alleged that the ILA failed to adequately inform members of the provisions of the LMRDA.

On October 8, 2003, the Court entered an Order (D.I. 60) granting summary judgment for the ILA with regard to Plaintiff Charles Miller-Bey's LMRDA section 101(a)(5) claim regarding procedural safeguards against improper union discipline. The Court further granted summary judgment in ILA's favor with regard to most of Mr. Knights' LMRDA section 101(a)(2) free speech claims, but did not grant summary judgment with respect to Mr. Knight's claim that his fine violated LMRDA sections 101(a)(2), 101(a)(5) and 609. The Court also granted summary judgment in ILA's favor with regard to Plaintiffs' LMRDA section 105 claim. Further, the Court abstained from deciding Plaintiffs' challenges to the two provisions of ILA's Constitution because it found

5

insufficient evidence to warrant the Court's involvement in examining the general adequacy of the union's constitutional provisions. See Knight v. Int'l Longshoremen's Ass'n, 286 F. Supp. 2d 360, 368-69 (D. Del. 2003).

After a bench trial on the remaining claims, the Court concluded that Mr. Knight had not proven by a preponderance of the evidence that the ILA violated his rights under sections 101(a)(5), 101(a)(2), and 609 of the LMRDA. See Knight v. Int'l Longshoremen's Ass'n, 375 F. Supp. 2d 351, 360 (D. Del. 2005). The Plaintiffs appealed this decision, contending that (1) the Court erred in abstaining from deciding Plaintiffs' challenges to the two provisions of ILA's Constitution, (2) the Court erred in finding that the ILA did not violate section 101(a)(5) by forcing Knight to appear before a biased hearing committee, and (3) the Court erred in concluding that the ILA complied with section 105. See Knight v. Int'l Longshoremen's Ass'n, 457 F.3d 331, 335-36 (3d Cir. 2006). The Third Circuit agreed with Plaintiffs, reversed the decision of this Court, and remanded for further proceedings. Id.

On remand, the Court ordered the ILA to narrow the language of its Constitution so that it would "prohibit only misuse of the ILA name and logo rather than encompass a prohibition of use of the name for identification purposes" and that it also take certain steps to better inform its members of the provisions of

the LMRDA.  (D.I. 125 at 4, 5-6.)  To address the due process and
procedural violations that occurred during Mr. Knight's hearing,
the Court ordered a new hearing before a new, unbiased tribunal
and ordered that Knight be allowed to record the hearing.  (Id.
at 5.)

Mr. Knight's second hearing took place on March 28, 2008
and was transcribed by a court reporter.  The re-hearing was
presided over by ILA's Ethics Officer, former Judge Milton E.
Mollen.  At the re-hearing, the ILA sought a ruling that Knight
be disciplined pursuant to Article XVIII of the ILA Constitution
for "conduct detrimental to the welfare of the I.L.A."  (See D.I.
140 at 64, 66 (excerpts of the ILA Constitution).)  Specifically,
the ILA alleged that Knight committed detrimental conduct by
violating section 302(b) of the LMRA, which makes it unlawful for
an officer or employee of a labor organization to accept money
from an employer of a labor organization's members.  See 29
U.S.C. § 186(b).  Following post-trial briefing, on September 12,
2008, Mr. Mollen issued his decision.  Briefly, Mr. Mollen ruled
that the Diamond State Port Corporation, which provided Knight
with the $500 in funds for the Worker's Coalition meeting, could
not be considered an employer within the meaning of section
302(b) because (1) it did not actually employ members of ILA
Local 1694, and (2) under section 2(2) of the National Labor
Relations Act, 29 U.S.C. § 152(2), it cannot, by definition, be

.                                                              7

an "employer" because it is an instrumentality of the state of Delaware.[6]  (See D.I. 140 at 95-96.)  Accordingly, Mr. Mollen ruled that Knight "technically did not violate § 302(b) of the LMRA."  (Id. at 96.)  Nevertheless, Mr. Mollen further ruled that "[a]t the time Mr. Knight's original hearing occurred, it was reasonable for the ILA to conclude that Mr. Knight violated the spirit and intent of § 302(b) and to direct the return of the money."  (Id.)  Based on this, Mr. Mollen concluded that the ILA acted within its rights when it disciplined Knight.

Following Mr. Mollen's decision, the parties brought the instant Motions requesting summary judgment.

## II.  Discussion

### A.  Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of

---

[6] Section 152(2) provides that "[t]he term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 152(2).

material fact and that the moving party is entitled to judgment
as a matter of law.  Fed. R. Civ. P. 56(c).  In determining
whether there are triable issues of material fact, a court must
review all of the evidence and construe all inferences in the
light most favorable to the non-moving party.  However, a court
should not make credibility determinations or weigh the evidence.

     To defeat a motion for summary judgment, the non-moving
party must "do more than simply show that there is some
metaphysical doubt as to the material facts . . . .  'In the
language of the Rule, the non-moving party must come forward with
'specific facts showing that there is a genuine issue for
trial.'"  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp., 475 U.S. 574, 586-87 (1986)(citations omitted).  However,
the mere existence of some evidence in support of the nonmovant
will not be sufficient to support a denial of a motion for
summary judgment; there must be enough evidence to enable a jury
to reasonably find for the nonmovant on that issue.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

     **B.   The Parties' Competing Motions For Summary Judgment On
          Mr. Knights LMRDA § 101(a)(5) Claim**

          **1.   The Parties' Contentions**

     The ILA seeks an order dismissing Mr. Knight's remaining
claim under section 101(a)(5) of the LMRDA, which pertains to the
due process and procedural violations present in Mr. Knight's
first hearing.  Briefly, the ILA contends that Mr. Knight's

second hearing remedied the previous defects because (1) in advance of Mr. Knight's second hearing, the ILA provided specific written charges setting forth "specific dates of events, individuals with knowledge relevant to the matter and [Mr. Knight's] actions that allegedly violated the ILA's Constitution" and (2) "it is beyond cavil that [Mr.] Mollen's conduct during [Mr.] Knight's disciplinary hearing demonstrated impartiality." (D.I. 139 at 6-7.)

Mr. Knight responds in his Cross-Motion For Summary Judgment that although the ILA held a new disciplinary hearing, in so doing, they once again violated his LMRDA rights "by finding him guilty of an offense with which he was never charged." (D.I. 146 at 2.) Specifically, Mr. Knight notes that Mr. Mollen found him guilty of "conduct detrimental to the welfare of the ILA" because he "violated the spirit and intent of § 302(b) of the Taft-Hartley Act" by accepting the $500 donation from Mr. Adam McBride. However, Mr. Knight contends, first, that he simply was not charged with "conduct detrimental to the . . . ILA" with respect to this donation. Second, Mr. Knight contends that to the extent the charges against him are generously construed to include such an allegation, the alleged "conduct detrimental to the ILA" can only be understood to be an actual violation of section 302(b), not some nebulous violation of the "spirit and intent" of section 302(b). (D.I. 146 at 1-2.) To be sure, Mr.

Knight specifically does not contend that the ILA's charges lacked specificity. Rather Mr. Knight argues that he "was never charged at all, in any shape, manner, or form, with the offense for which he was found guilty." (Id. at 2.)

## 2. Decision

The Supreme Court has explained that section "101(a)(5)(A) [of the LMRDA] requires that a member subject to discipline be 'served with written specific charges'" and that these charges be "specific enough to inform the accused member of the offense that he has allegedly committed." Int'l Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 245 (1971) (citations omitted). However, the Supreme Court further instructed that "a union may discipline its members for offenses not proscribed by written rules at all . . . ." Hardeman, 401 U.S. at 244. Thus, "[r]eference to a specific provision of the union's constitution or by-laws is not required to meet the specificity requirement of section 101(a)(5) . . . ." Frye v. United Steelworkers of Am., 767 F.2d 1216, 1223 (7th Cir. 1985). In deciding section 101(a)(5)(A) cases, courts thus focus on two issues other than the presence of reference to written rules. First courts have considered whether the union charges contain a "statement of the facts describing the incident on which the charge is based." Johnson v. National Ass'n of Letter Carriers Branch 1100, 182 F.3d 1071, 1074 (9th Cir. 1999); see also Frye, 767 F.2d at 1223

11

(explaining that written charges should contain a detailed statement of the facts relating to the incident). Second, as the Supreme Court recognized in Hardeman, courts should examine written charges to "determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense." Hardeman, 401 U.S. at 245. Following Hardeman, courts have often characterized the issue of whether union members have been "misled or otherwise prejudiced" as dispositive.[7]

In reviewing the caselaw, the Court has identified few cases where courts have held that union members have been misled or prejudiced by inadequate disciplinary charges.[8] Furthermore, any such cases the Court has identified are, in the Court's view,

---

[7] See, e.g., Dille v. Williamson, 852 F.2d 1287 (6th Cir. 1988) ("Nonetheless, in order to prevail on a claim that union rules are vague or overbroad, the disciplined member must present evidence that he was misled or otherwise prejudiced in preparing his defense."); Johnson, 182 F.3d at 1076 ("Upon finding charges to be insufficiently specific, some courts require the disciplined member to 'demonstrate that he was misled or otherwise prejudiced in the presentation of his defense' to establish a violation of § 411(a)(5)."); Frye, 767 F.2d at 1223 (7th Cir. 1985) ("However, to establish a violation of 101(a)(5)(A), a disciplined member must demonstrate that he was misled or otherwise prejudiced in the presentation of his defense.").

[8] Notably, on reviewing Mr. Knight's briefs (D.I. 137; D.I. 146; D.I. 152), it appears that Mr. Knight has not directed the Court to a single case in which a court has concluded that a union member was misled or prejudiced by inadequate disciplinary charges.

extreme.[9] Accordingly, Mr. Knight faces a difficult burden in attempting to establish that he was not presented with adequate charges in advance of his second disciplinary hearing.

Nevertheless, taking into consideration this legal standard, the Court remains unpersuaded that the ILA, through a second hearing, has provided an adequate remedy for the procedural defects present in Mr. Knight's first hearing. Indeed, in the Court's view, although the ILA may have remedied its previous failures to provide an unbiased tribunal and allow for recording of the hearing, it may well have simply introduced a new procedural defect by failing to adequately inform Mr. Knight of the array of charges that he could be potentially found guilty of.

---

[9] See, e.g., Waring v. International Longshoremen's Asso., Local 1414, 653 F. Supp. 374, 379 (S.D. Ga. 1986) ("The typographical error made it unclear what provision of the international constitution, if any, was applicable to his behavior, and it would have taken a commendable degree of foresight for the plaintiff to have determined that his conduct might subject him to charges under the international constitution of 'illegal use of name.'"); Allen v. International Alliance of Theatrical, etc., 338 F.2d 309, 315 (5th Cir. 1964) ("Fair play entitles an accused to rely on the written charge made against him in preparing his defense, limits the trial to proof in support of that charge, and bars his being found guilty of an offense with which he is not charged."); Johnson, 182 F.3d at 1075 ("Although these allegations make an overarching charge of misconduct, they lack any factual detail that would give Fontana notice of the specific actions he had to defend."); Strom v. National Asso. of Basketball Referees, 564 F. Supp. 250, 254 (E.D. Pa. 1983) ("Because the letter was vague as to the conduct being charged, even when considered in the context of the events that transpired, it was inadequate as 'written specific charges' under the LMRDA.").

Here, there are only two possible sources of written charges
against Mr. Knight. First, there is the July 28, 2000 letter
from Paylor to Robert Gleason, Secretary Treasurer of the ILA,
that specifically set forth the charges addressed during Mr.
Knight's first hearing. (D.I. 137, Exh. 1.) Second, there is
the ILA's March 2008 pre-hearing submission prepared in advance
of Mr. Knight's second hearing, which summarizes the positions
the ILA would purportedly take at the hearing. (D.I. 140 at 2-
15.) On reviewing these documents, the Court cannot conclude as
a matter of law that Mr. Knight was adequately notified that he
could be found guilty of violating the "spirit and intent" of
section 302(b) of the Taft-Hartley Act.

First, with regard to Paylor's July 2000 letter, the Court
concludes that it simply cannot be reasonably understood as
charging Knight with "conduct detrimental to the welfare of the
I.L.A." through a violation of section 302(b), let alone through
a violation of the "sprit and intent" of section 302(b). Indeed,
to the extent the letter even mentions "conduct detrimental to
the I.L.A.," it is in the third paragraph. In this paragraph,
however, Paylor charges Mr. Knight with having made frivolous
charges against Paylor; nothing remotely related to section
302(b) is mentioned in this paragraph. The first paragraph of
Mr. Paylor's letter further explains that Paylor was "filing
these charges against the three above ILA members in accordance

14

with Article XVIII section, paragraphs (b), (e)" of the ILA
Constitution, which, in turn, explain that members can be
disciplined for "conduct detrimental to the ILA." However, in
the Court's view, this paragraph cannot be reasonably understood
as comprising some all-encompassing, omnibus charge that Mr.
Knight committed "conduct detrimental to the ILA." Rather, this
paragraph merely serves to introduce the charges that appear in
the following two paragraphs. Furthermore, even if one assumes
that the first paragraph of Paylor's letter constitutes an actual
charge against Mr. Knight, it contains nothing that would
adequately put Mr. Knight on notice that his alleged detrimental
conduct related to a violation of section 302(b) of the Taft-
Hartley act. Accordingly, the Court concludes that Paylor's July
2000 letter did not adequately apprise Mr. Knight of the charge
of which he was ultimately found guilty.

Although, as discussed in greater detail below, the ILA
contends that in advance of Mr. Knight's second hearing it
provided revised charges in a pre-hearing submission to Mr.
Mollen, Mr. Knight disputes that this is the case. In the
Court's view, there remains significant uncertainty as to wether
the ILA's pre-hearing submission can be viewed as containing
revised charges against Mr. Knight. As an initial matter, as Mr.
Knight notes, the pre-hearing submission simply is not, on its
face, a set of charges, but is instead a pre-trial brief filed

15

"in support of disciplinary charges . . . ." (D.I. 140 at 4.)
Although this document summarizes the positions the ILA
ostensibly took during Mr. Knight's second hearing, it includes
no section clearly identified as containing new charges. Rather,
it includes only a "Preliminary Statement," a "Statement of
Facts," an "Argument" and a "Conclusion." Furthermore, in
negotiating procedural issues in advance of Mr. Knight's second
hearing, counsel for Mr. Knight asked counsel for the ILA in an
e-mail that "I assume the charges against Knight would be the
same ones originally filed against him by Paylor, except for the
charge based on Art. XXVII, which is no longer valid." (D.I.
146.) Counsel for the ILA responded that "[t]he charges to be
considered will not be based on Article XXVII." (Id.) Thus, to
the Court's knowledge, the ILA said nothing to correct the
assumption that Mr. Knight's second hearing would be based on Mr.
Paylor's initial set of charges. Although, prior to this
exchange, the ILA had explained in an August 2006 status report
to the Court that it would "provide Knight with specific written
charges" (D.I. 113 at 5), the Court sees no evidence that after
this exchange it informed Mr. Knight that it would, instead of
relying on the previous charges, provide a new set of charges,
either in its pre-hearing submission or anywhere else. In the
Court's view, this is significant evidence that Mr. Knight may
have been misled in the preparation of his defense.

16

Having noted this, the Court nevertheless further observes that the ILA's pre-hearing submission explains in the "Argument" section that "Knight's acceptance of money from an ILA employer warrants discipline because, as the financial secretary of Local 1694, Knight knew or should have known that his actions violated Section 302(b) of the LMRA, and that he was exposing himself and his local to liability." (D.I. 140 at 6.) Thus, though not formally styled as a set of charges, it is clear that the ILA's pre-hearing submission addressed the issue of whether Mr. Knight violated section 302(b).[10] In this regard, Mr. Mollen stated in

---

[10] Notably, following Mr. Knight's first disciplinary hearing, the ILA disciplinary committee clearly found Mr. Knight guilty of violating section 302(b). (See 6/10/04 Bench Trial, Pl. Exh. 10 at 4.) During Mr. Knight's June 2004 bench trial before this Court, Mr. Knight argued that in so doing, the ILA tribunal found him guilty of something that he was never charged with, raising arguments similar to those that he raises now. (See D.I. 90 at 9-10.) However, following the Court's ruling in the June 2004 bench trial, Mr. Knight did not appeal this particular issue to the Third Circuit. In light of these events, the ILA argues that (1) as a practical matter, Mr. Knight has been on notice of the section 302(b) charge for years, and (2) Mr. Knight's failure to appeal this issue constitutes a waiver of any argument that Mr. Paylor's original charges lacked specificity. (See D.I. 149 at 3-4.) The Court is unpersuaded by these arguments. On remand from the Third Circuit, this Court ordered a new hearing to remedy specific procedural defects present in the initial hearing. Any new hearing would necessarily entail the provision of "written specific charges." Indeed, as noted above, in advance of the second hearing, the parties discussed this very issue. The Court sees no reason why the ILA should, because Mr. Knight declined to appeal this issue to the Third Circuit, now be excused from having to provide "written specific charges." Furthermore, because Mr. Knight's second hearing was intended to be a hearing de novo, and not a mere rehash of Mr. Knight's initial flawed hearing, the Court is reluctant to conclude that Mr. Knight should have recognized that

17

his Award of Arbitrators that "[a]t this late point in the
litigation, the issue of whether there was a § 302 violation is
firmly on the table, has been fully briefed by the parties, and
is ripe for my consideration." (Id. at 95.) Furthermore, during
Mr. Knight's second hearing, counsel for Mr. Knight, though
asserting that Mr. Knight "was never charged with the fact that
accepting this contribution from Mr. McBride was conduct
detrimental to the Union," appears to have addressed the section
302(b) issue, arguing that only "accepting things of value from
private sector employers are covered" by this statute. (D.I. 140
at 23.) Significantly, Mr. Mollen considered and accepted Mr.
Knight's argument that section 302(b) only applies to private
employers, concluding in his arbitration award that "Mr. Knight
technically did not violate § 302(b) of the LMRA" because the
Diamond State Port Corporation is an instrumentality of the State
of Delaware. (D.I. 140 at 96.)

However, the Court still cannot conclude that Mr. Knight's
second hearing did not suffer from a defect that could have

---

because the ILA tribunal found him guilty of violating § 302(b)
in his first hearing that this would necessarily be a charge in
his second hearing. In any event, as explained above, the
Court's conclusion that there remain genuine issues of material
fact as to whether Mr. Knight's second hearing was procedurally
flawed is based mainly on the outstanding issue of whether Mr.
Knight was specifically charged with violating the "spirit and
intent" of section 302(b). Thus, even if the Court were to
accept the ILA's arguments on this issue, it would not change the
Court's ultimate conclusion.

significantly misled Mr. Knight.  Indeed, although the ILA may
have raised the issue of a section 302(b) violation in its pre-
hearing submission, the Court is not convinced that it raised the
issue of whether Mr. Knight violated the "spirit and intent" of
section 302(b), which is what Mr. Mollen ultimately found Mr.
Knight to be guilty of.  In the Court's view, this point is
significant.  Indeed, Mr. Mollen himself clearly concluded that
an actual violation of section 302(b) is distinct from a
violation of the "spirit and intent" of section 302(b):  Mr.
Mollen exonerated Mr. Knight of violating section 302(b), but
found him guilty of violating "the spirit and intent" of section
302(b).  If the ILA tribunal is going to distinguish between
section 302(b), which applies only to private employers, and the
"spirit and intent" of section 302(b), which apparently does not,
it is not reasonable to do so for the first time after Mr. Knight
has had his hearing.  To the extent Mr. Knight responded to the
issue of a violation of section 302(b) of the Taft-Hartley act,
Mr. Knight's defense appears to have been based on the theory
that section 302(b) applies only to private employers and not
government employers.  As Mr. Mollen clearly held, this defense
is insufficient with regard to a violation of the "spirit and
intent" of section 302(b).  Thus, to the extent Mr. Knight was
not told in advance that the alleged "conduct detrimental to the
ILA" was a violation of the "spirit and intent" of section

19

302(b), he may well have been prejudiced because he could not have known what defenses to raise. In the Court's view, it would have taken unusual foresight for Mr. Knight to predict that the ILA tribunal would disregard the fact that, for the purposes of the LMRA, the term "employer" does not include "any State or political subdivision thereof," 29 U.S.C. § 152(2), and instead hold that this aspect of the statute pertains only to mere "technical" violations of section 302(b).

Accordingly, for the foregoing reasons, with respect to Mr. Knight's section 101(a)(5) claim, the Court will deny the ILA's Motion For Summary Judgment. At this time, the Court will also deny Mr. Knight's Motion For Summary Judgment on his section 101(a)(5) claim. Despite the foregoing, the Court finds the current record inadequately developed to conclude, as a matter of law, that Mr. Knight was misled or otherwise prejudiced in preparing his defense. Indeed, there is much information that the parties have not provided to the Court, including Mr. Knight's pre-hearing submission and both parties' post-hearing briefs. Likewise, in the Court's view, the parties failed to adequately explore the record of Mr. Knight's second evidentiary hearing. Consideration of this material, at the very least, is required for the Court to evaluate the extent to which Mr. Knight may have been misled or prejudiced in the preparation of

his defense, if at all. In this regard, the Court further notes
that the ILA's prehearing submission explains as follows:

> The ILA has an interest in forbidding all transactions
> between union officials and port employers. One can
> envision a situation where ILA official from one port
> accept something of value from an employer who works in
> another port. Even if that hypothetical does not
> violate Section 302, it most certainly would undermine
> labor relations and would therefore be "conduct
> detrimental to the welfare of the ILA" and would fall
> in the ambit of Article XVIII as an offense worthy of
> discipline.

(D.I. 140 at 13 (emphasis added).) Thus, there is evidence that
the ILA raised the possibility of discipline for actions that did
not strictly violate section 302(b). This issue has not been
fully developed and, on the current record, cannot be resolved on
summary judgment. Accordingly, in conjunction with a hearing on
damages, which is discussed below, the Court will take additional
evidence and argument on Mr. Knight's section 101(a)(5) claim.

## C.   Mr. Knight's Motion For An Order Requiring The ILA To
Amend Its Constitution

### 1.   The Parties' Contentions

Mr. Knight contends that the ILA has failed to fully comply
with this Court's July 2007 order (D.I. 130) regarding the
specific language that should be used to replace Article XXVII of
the ILA Constitution, which pertains to the use of the ILA name
and emblem and which the Third Circuit held to be "unreasonable
on its face." Knight, 457 F.3d at 339. Specifically, Mr. Knight
contends that although the ILA amended Article XXVII of the

21

Constitution, it failed to include specific Court-ordered language confirming that ILA members were free to use the ILA name "incidental to a discussion concerning the organization." (D.I. 146 at 7-8.)

The ILA acknowledges the omission, but contends that it was only a clerical error. The ILA contends that it has since corrected the error, having prepared two thousand new Constitution books with corrected versions of Article XXVII. In addition, the ILA contends that it has prepared one thousand copies of the corrected version of the relevant page, which can be inserted into previously printed ILA Constitution books. The ILA has supplied the Court with page proofs for these corrected publications. (See D.I. 149, Exh. B.)

### 2. Decision

The Court accepts the ILA's representation that its failure to amend its Constitution in accordance with this Court's order was clerical in nature. In this regard, the ILA states that if Plaintiffs had raised the error earlier, "it would have been corrected immediately." (D.I. 149 at 6.)

Nevertheless, although it appears that the ILA has begun the process of printing revised copies of its Constitution, the Court sees no evidence that the ILA, now fully aware of its clerical error, has taken measures to formally adopt the specific Court-ordered language for Article XXVII of its Constitution. In the

Court's view, this measure is required to fully and properly correct the ILA's clerical error.  Accordingly, the Court will grant Mr. Knight's Motion for an order requiring the ILA to amend Article XXVII of its Constitution.

**D.  Damages**

**1.  The Parties' Contentions**

The parties have submitted competing status reports regarding what damages, if any, Mr. Knight should be awarded for the ILA's failure to provide him with a disciplinary hearing that complied with the LMRDA.  (See D.I. 136; D.I. 144.)  In addition, with his Cross-Motion For Summary Judgment, Mr. Knight seeks an order awarding him $250,000 in punitive damages.

The ILA contends that Plaintiff is not entitled to any damages for his due process claim because, in light of Mr. Mollen's decision to discipline Mr. Knight, it has been established that the procedural flaws present in Mr. Knight's first hearing did not result in improper discipline.  Rather, according to the ILA, Mr. Mollen's decision establishes that Mr. Knight would have been disciplined following his first hearing even had it not been infected by procedural defects.  In these circumstances, the ILA contends that Mr. Knight cannot show that the procedural flaws in his first hearing proximately caused him any damages.  (See D.I. 136 at 4-5.)  The ILA further contends that even if Mr. Knight can establish a causal connection between

23

the due process violations and any harm he may have suffered, this harm rises only to the level of emotional distress, which is not a basis for damages under the LMRDA. (Id. at 10.) Rather, according to the ILA, Mr. Knight must establish some physical manifestation of his emotional distress, which he has not and cannot do.

Mr. Knight responds, first, that the ILA premises its argument on the assumption that this Court will uphold Mr. Mollen's decision. To the extent the Court overturns Mr. Mollen's decision, Mr. Knight contends that damages are appropriate because, inter alia, he "has for over eight years been unjustly and unlawfully stigmatized by the improper discipline imposed upon him by the ILA." (D.I. 144 at 2.) Second, Mr. Knight contends that even if the Court upholds Mr. Mollen's decision, the conclusion that Mr. Knight violated the "spirit and intent" of section 302(b) of the Taft-Hartley act is not nearly as damaging as the earlier ILA decision that Mr. Knight actually violated section 302(b). Mr. Knight argues that, in these circumstances, he "should be awarded a substantial award of compensatory damages to make up that difference." (Id. at 6.) With respect to the ILA's contention that Mr. Knight cannot show any physical manifestation of his emotional distress, Mr. Knight notes that the ILA concedes that Mr. Knight has testified to having suffered from sleeping difficulties and that numerous

24

courts have recognized that this can support a damages award.
(Id. at 4.)  Finally, Mr. Knight contends that $250,000 of
punitive damages are appropriate in this case because, (1) at his
first hearing, the ILA recklessly appointed a biased panel, and
(2) the ILA failed to fully comply with this Court's remedial
order regarding amendment of its Constitution.  (Id. at 9-12.)

## 2.  Decision

Mr. Knight "may not recover for damages caused by actual
imposition of the invalid sanction itself if [the ILA]
demonstrate[s] that he would have been convicted and sanctioned
even if he had been retried before an openminded tribunal."
Feltington v. Moving Picture Machine Operators Union etc., 605
F.2d 1251, 1258 (2d Cir. 1979); see also Waring v. International
Longshoremen's Asso., Local 1414, 665 F. Supp. 1576, 1582-83
(S.D. Ga. 1987) ("[I]f defendants can prove that the plaintiff
would have been suspended had his hearing not been procedurally
flawed, it would appear that he will be entitled only to damages
for any 'emotional distress' arising out of the due process or
equal rights violations . . . .").  The ILA has not established
this to the Court's satisfaction.  First, as Mr. Knight notes, in
his first hearing he was found to have violated section 302(b) of
the Taft-Hartley Act.  Yet in his second hearing, Mr. Mollen
exonerated Mr. Knight of violating this act, finding him guilty
of violating the "spirit and intent" of section 302(b).  Thus,

Mr. Knight's second hearing, though procedurally flawed, actually tends to suggest that Mr. Knight should not have been disciplined following his first hearing for actually violating section 302(b). In this regard, the Court agrees with Mr. Knight that, at the very least, there remains an issue as to whether the Court should award damages to compensate him for the 8-year time span during which he was adjudged guilty of an offense more significant than the one he was ultimately found guilty of by Mr. Mollen.

Furthermore, should the Court ultimately agree with Mr. Knight that his second disciplinary hearing, like his first, suffered from procedural defects, then the Court simply could not rely upon the second hearing to establish that Mr. Knight would have been disciplined in his first hearing regardless of its procedural failings. Unfortunately, given the lengthy history of this litigation and the fact that there have already been two ILA disciplinary hearings, the Court concludes that a third disciplinary hearing is not the most appropriate manner of addressing this issue and bringing this case to a resolution. Rather, the Court will proceed to an evidentiary and damages hearing. "For a violation of § 101 LMRDA rights, recovery may include, in an appropriate case, damages for stigmatization, loss of earnings, and physical and emotional distress. Punitive damages are potentially available, as are attorney's fees."

Bollitier v. International Brotherhood of Teamsters, etc., 735 F. Supp. 612, 620 (D.N.J. 1989). At the damages hearing, the Court will hear evidence from the parties regarding all these forms of damages. The Court will reserve decision on Mr. Knight's request for $250,000 in punitive damages until after the hearing.

### III. CONCLUSION

For the reasons discussed, Defendant's Motion For Summary Judgment As To Liability On Plaintiff's Remaining Claim (D.I. 138) will be denied. In addition, Plaintiffs' Cross-Motion For Summary Judgment And For An Order Requiring The ILA To Amend Article XXVII Of The ILA Constitution And For An Award Of Punitive Damages (D.I. 145) will be granted in part. Specifically, Plaintiffs' Motion will be granted to the extent it seeks an order requiring the ILA to amend its Constitution, but not to the extent it seeks summary judgment on Mr. Knight's section 101(a)(5) claim or $250,000 in punitive damages. The Court reserves decision on both of these issues until after a hearing to be held at a date set by separate Order.