IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDWARD KNIGHT, CHARLES MILLER-BEY, :
EDDIE MCBRIDE and LEONARD RILEY, :
JR., :
                                 :
         Plaintiffs, :
                                   :
    v. : Civil Action No. 01-005-JJF
                                   :
INTERNATIONAL LONGSHOREMEN'S :
ASSOCIATION, :
                                   :
         Defendant. :

---

Michael J. Goldberg, Esquire, Cherry Hill, New Jersey.

Perry F. Goldlust, Esquire, Wilmington, Delaware.

Attorneys for Plaintiffs.

John P. Sheridan, Esquire and Kevin Marrinan, Esquire of MARRINAN & MAZZOLA MARDON, P.C., New York, New York.

Stephen B. Potter, Esquire of POTTER, CARMINE & ASSOCIATES, P.A., Wilmington, Delaware.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

July 14, 2010
Wilmington, Delaware.

**Farnan**  **District Judge.**

At a hearing held on December 14, 2009, the Court considered
the remaining issues in this action concerning liability and
damages.  Plaintiff Edward Knight ("Mr. Knight") and Defendant
International Longshoremen's Association ("ILA") filed pre-
hearing proposed findings of fact and conclusions of law on the
liability issue and post-hearing briefing on the question of
damages.  This Memorandum Opinion constitutes the Court's
findings of fact and conclusions of law on the remaining issues.

## I. BACKGROUND

Mr. Knight filed this action with Charles Miller-Bey ("Mr.
Miller-Bey") and others (collectively, "Plaintiffs") against the
ILA, a union of maritime workers, and a group called the Workers
Coalition, which Plaintiffs contend was formed to foster positive
change in the ILA.  Plaintiffs are members of the ILA, belonging
to its Local 1694 chapter.  Prior to the events at issue in this
lawsuit, Mr. Knight was financial secretary of Local 1694.  At a
meeting of Local 1694 in early 2000, Mr. Knight made a successful
motion to have the Local contribute $1,500 to host a Workers
Coalition meeting.  Promotional materials for the meeting were
distributed.  At some point, Adam McBride ("Mr. McBride"), the
Executive Director of the Diamond State Port Corporation, an
instrumentality of the State of Delaware that allegedly employed
ILA members, became aware of the meeting and gave a $500

2

contribution to Mr. Knight to help fund the meeting.  Mr. McBride also was scheduled to speak at the meeting.

After speaking with ILA Vice President James H. Paylor, Mr. McBride decided not to speak at the meeting, but he did not withdraw his financial support.  Blaming Mr. Paylor for the withdrawal and believing that Mr. Paylor had stated that the Workers Coalition was being investigated for communist affiliation, Mr. Knight and Mr. Miller-Bey brought intra-union charges accusing Mr. Paylor of interfering with Local 1694's autonomy and causing harm and division among the ILA.

In response, Mr. Paylor filed charges against Mr. Miller-Bey and Mr. Knight, accusing them of filing frivolous charges that were "detrimental to the welfare of the I.L.A." and of violating several provisions of the ILA constitution.  Plaintiffs requested additional information on the charges against them, and it is undisputed that this request was denied.  The charges against Mr. Miller-Bey and Mr. Knight were heard before the ILA in August 2000.  The Committee that heard the charges (the "Committee") found that Mr. McBride had been misled by Mr. Knight into believing that the Workers Coalition meeting was endorsed by the ILA.  The Committee also found that Mr. McBride's donation and Mr. Knight's acceptance of the donation violated the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 186(b), provisions proscribing gifts from employers to employee

3

representatives. The Committee "noted" that the Workers Coalition should not have used the ILA logo or the Local 1694 name in combination with the solicitation of funds and found that in doing so, Mr. Knight engaged in conduct detrimental to the union as prohibited by the ILA Constitution. Accordingly, the Committee recommended that the executive council suspend Mr. Knight from serving the Local 1694 as financial secretary for a period of six months and further recommended that he be fined in the amount of $500. In October 2000, the executive council followed this recommendation. Mr. Paylor was found not guilty of any wrongful conduct and, with respect to Mr. Miller-Bey, the Committee recommended no discipline.

Shortly after these events, in January 2001, Mr. Knight and the three other plaintiffs filed this lawsuit against the ILA alleging: (1) a violation of Plaintiffs' rights to procedural safeguards pursuant to § 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5);[1] (2) a violation of Plaintiffs' right to free speech under the LMRDA, pursuant to sections 101(a)(2) and 609, 29 U.S.C §§ 411(a)(2)[2] and 529;[3] (3) a challenge to Articles XVIII and

---

[1] Section 411(a)(5) provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

[2] Section 411(a)(2) provides that "[e]very member of any labor organization shall have the right to meet and assemble

XXVII of the ILA Constitution as overbroad and vague, and
pursuant to section 101 (a)(2) of the LMRDA, 29 U.S.C. §
411(a)(2); and (4) a violation of LMDRA section 105, 29 U.S.C. §
415.[4]  (D.I. 23.)  In greater detail, with respect to the section
101(a)(5) claim, Plaintiffs Knight and Miller argued (1) that the
charges against them were not adequately stated, (2) that they
were not given adequate time to prepare their defenses, (3) that
the hearing committee was biased, and (4) that they were
improperly prohibited from recording the hearing on tape.  As to
the section 101(a)(2) claim, Plaintiffs maintained that (1) the
activities for which Mr. Knight and Mr. Miller-Bey were charged

---

freely with other members; and to express any views, arguments,
or opinions; and to express at meetings of the labor organization
his views, upon candidates in an election of the labor
organization or upon any business properly before the meeting,
subject to the organization's established and reasonable rules
pertaining to the conduct of meetings: Provided, That nothing
herein shall be construed to impair the right of a labor
organization to adopt and enforce reasonable rules as to the
responsibility of every member toward the organization as an
institution and to his refraining from conduct that would
interfere with its performance of its legal or contractual
obligations."

[3] Section 529 provides that "[i]t shall be unlawful for any
labor organization, or any officer, agent, shop steward, or other
representative of a labor organization, or employee thereof to
fine, suspend, expel, or otherwise discipline any of its members
for exercising any right to which he is entitled under the
provisions of this chapter."

[4] Section 415 provides that "[e]very labor organization
shall inform its members concerning the provisions of this Act
[29 USC §§ 401 et seq.]."

5

(and for which Mr. Knight was punished) are protected by the freedom of speech and assembly provisions of the LMRDA, and (2) that Articles XXVII and XVIII, § 1(b) of the ILA Constitution, which prohibit the "illegal use" of the ILA name and "conduct detrimental to the welfare of the ILA" respectively, are vague and overbroad. Finally, as to the section 105 claim, Plaintiffs contended that the ILA failed to adequately inform members of the provisions of the LMRDA.

On October 8, 2003, the Court entered an Order (D.I. 60) granting summary judgment in favor of ILA with regard to Mr. Miller-Bey's LMRDA section 101(a)(5) claim regarding procedural safeguards against improper union discipline. The Court also granted summary judgment in favor of the ILA with regard to most of Mr. Knights' LMRDA section 101(a)(2) free speech claims, but the Court did not grant summary judgment with respect to Mr. Knight's claim that his fine violated LMRDA sections 101(a)(2), 101(a)(5) and 609. The Court also granted summary judgment in favor of the ILA with regard to Plaintiffs' LMRDA section 105 claim. Further, the Court abstained from deciding Plaintiffs' challenges to the two provisions of the ILA Constitution because it found insufficient evidence to warrant the Court's involvement in examining the general adequacy of the union's constitutional provisions. See Knight v. Int'l Longshoremen's Ass'n, 286 F. Supp. 2d 360, 368-69 (D. Del. 2003).

6

After a bench trial on the claims that withstood summary judgment, the Court concluded that Mr. Knight had not proven by a preponderance of the evidence that the ILA violated his rights under sections 101(a)(5), 101(a)(2), and 609 of the LMRDA. See Knight v. Int'l Longshoremen's Ass'n, 375 F. Supp. 2d 351, 360 (D. Del. 2005). The Plaintiffs appealed, contending that (1) the Court erred in abstaining from deciding Plaintiffs' challenges to the two provisions of the ILA Constitution, (2) the Court erred in finding that the ILA did not violate section 101(a)(5) by forcing Mr. Knight to appear before a biased hearing committee, and (3) the Court erred in concluding that the ILA complied with section 105. See Knight v. Int'l Longshoremen's Ass'n, 457 F.3d 331, 335-36 (3d Cir. 2006). The Third Circuit agreed with Plaintiffs, reversed the decision of the Court, and remanded this action for further proceedings. Id.

On remand, the Court ordered the ILA to narrow the language of its Constitution so that it would "prohibit only misuse of the ILA name and logo rather than encompass a prohibition of use of the name for identification purposes" and that it also take certain steps to better inform its members of the provisions of the LMRDA. (D.I. 125 at 4, 5-6.) To address the due process and procedural violations that occurred during Mr. Knight's hearing, the Court ordered a new hearing before a new, unbiased tribunal and further ordered that Mr. Knight be allowed to record the

hearing. (Id. at 5.)

Mr. Knight's second hearing took place on March 28, 2008 and was transcribed by a court reporter. The re-hearing was presided over by the ILA's Ethics Officer, former Judge Milton E. Mollen. At the re-hearing, the ILA sought a ruling that Mr. Knight be disciplined pursuant to Article XVIII of the ILA Constitution for "conduct detrimental to the welfare of the I.L.A." (See D.I. 140 at 64, 66 (excerpts of the ILA Constitution).) Specifically, the ILA alleged that Mr. Knight committed detrimental conduct by violating section 302(b) of the LMRA, which makes it unlawful for an officer or employee of a labor organization to accept money from an employer of a labor organization's members. See 29 U.S.C. § 186(b). Following post-trial briefing, on September 12, 2008, Mr. Mollen issued his decision. Briefly, Mr. Mollen ruled that the Diamond State Port Corporation, which provided Mr. Knight with the $500 in funds for the Worker's Coalition meeting, could not be considered an employer within the meaning of section 302(b) because (1) it did not actually employ members of ILA Local 1694, and (2) under section 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2), it cannot, by definition, be an "employer" because it is an instrumentality of the state of Delaware.[5] (See D. Exh 11[6] at

_____

[5] Section 152(2) provides that "[t]he term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any

8

6-7.) Accordingly, Mr. Mollen ruled that Mr. Knight "technically did not violate § 302(b) of the LMRA." (Id. at 7.) Nevertheless, Mr. Mollen further ruled that "[a]t the time Mr. Knight's original hearing occurred, it was reasonable for the ILA to conclude that Mr. Knight violated the spirit and intent of § 302(b) and to direct the return of the money." (Id.) Based on this, Mr. Mollen concluded that the ILA acted within its rights when it disciplined Mr. Knight, and therefore, Mr. Mollen upheld the $500 fine imposed on Mr. Knight.

Following Mr. Mollen's decision, the parties filed summary judgment motions in this action. (D.I. 138 and 145.) The Court denied the relief sought by the parties, with the exception of Plaintiffs' request that Defendant be compelled to amend Article XXVII of the ILA Constitution as required by the Court's prior Order. In addition, the Court ordered a hearing to be held on the issue of damages. See Knight v. Int'l Longshoremen's Ass'n, 639 F. Supp. 2d 437 (D. Del. 2009). Specifically, the Court concluded that it could not decide as a matter of law whether Mr.

---

wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 152(2).

[6] The Court will use the designation, "D. Exh." to refer to exhibits introduced by ILA at the December 14, 2009 hearing, and the designation, "P. Exh." to refer to Plaintiffs' exhibits from the hearing.

9

Knight was adequately notified of the union charges for which he was found guilty, i.e. the charge that he violated the "spirit and intent" of § 302(b) such that his conduct was detrimental to the ILA. Id. at 444-45. Concerning damages, the Court concluded that there was insufficient evidence on the record to issue a ruling, and therefore, the Court ordered a hearing to address both of the remaining issues. Id. at 449-50.

On December 14, 2009, the Court held a Hearing at which both Mr. Knight and the ILA presented testimony and exhibits concerning damages and the remaining liability issue. (See D.I. 176.) At the conclusion of the Hearing, the Court instructed the parties to file post hearing briefs and proposed findings of fact. Those submissions were completed in February 2010.

## II. PLAINTIFF KNIGHT'S CLAIM UNDER LMRDA § 101(a)(5)

As noted above, the remaining liability issue before the Court is Mr. Knight's contention that his due process rights were violated in the first disciplinary hearing and that the second disciplinary hearing did not resolve the alleged violation because a new due process issue was introduced. Specifically, Mr. Knight contends that a new procedural defect was created, because the ILA failed to adequately inform him of the array of potential charges against him. In essence, Mr. Knight argues that he was convicted of misconduct with which he was not charged, which is a violation under LMRDA § 101(a)(5)(A). This

10

issue was addressed by the parties in competing motions for Summary Judgment and at that time the Court concluded that the issue required further argument by the parties. As previously noted, the December 14, 2009 hearing addressed this issue and the issue of damages.

## A. Background: The Origin Of The Charges

Although the Court concluded that summary judgment was not warranted before the Hearing, the Court's prior decision reached several conclusions that narrow the focus of the instant discussion. See Knight v. Int'l Longshoremen's Ass'n, 639 F. Supp. 2d 437, 444-45 (D. Del. 2009). Specifically, the Court concluded that there are only two possible sources of written charges against Mr. Knight: (1) the July 28, 2000 letter from James Paylor to Robert Gleason that set forth the charges addressed during the first disciplinary hearing, and (2) the ILA's March 2008 pre-hearing submission prepared in advance of the second disciplinary hearing. Id. at 444. Additionally, the Court concluded that Paylor's July 2000 letter "did not adequately apprise Mr. Knight of the charge of which he was ultimately found guilty." Id. at 445. Thus, the only source requiring discussion concerning the sufficiency of the notice of charges to Mr. Knight prior to the second hearing, is the ILA's pre-hearing submission.

11

## B. Legal Standard On Notice Required Under LMRDA § 101(a)(5)

The Court previously addressed the standard to be used in evaluating proper notice under LMRDA § 101(a)(5) when a union member is subject to discipline.  See Knight v. Int'l Longshoremen's Ass'n, 639 F. Supp. 2d 437, 443-44 (D. Del. 2009). In pertinent part, LMRDA § 101(a)(5) states "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . unless such member has been (A) served with written specific charges[.]"

In defining the necessary specificity of charges, the Supreme Court explained that section "101(a)(5)(A) [of the LMRDA] requires that a member subject to discipline be 'served with written specific charges'" and that these charges be "specific enough to inform the accused member of the offense that he has allegedly committed."  Int'l Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 245 (1971) (citations omitted).  However, the Supreme Court further instructed that "a union may discipline its members for offenses not proscribed by written rules at all." Hardeman, 401 U.S. at 244.  Thus, "[r]eference to a specific provision of the union's constitution or by-laws is not required to meet the specificity requirement of section 101(a)(5)."  Frye v. United Steelworkers of Am., 767 F.2d 1216, 1223 (7th Cir. 1985).  In deciding section 101(a)(5)(A) cases, courts focus on two issues other than the presence of reference to written rules.

First, courts have considered whether the union charges contain a "statement of the facts describing the incident on which the charge is based." Johnson v. National Ass'n of Letter Carriers Branch 1100, 182 F.3d 1071, 1074 (9th Cir. 1999); see also Frye, 767 F.2d at 1223 (explaining that written charges should contain a detailed statement of the facts relating to the incident). Second, as the Supreme Court recognized in Hardeman, courts should examine written charges to "determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense." Hardeman, 401 U.S. at 245. Following Hardeman, courts have often characterized the issue of whether union members have been "misled or otherwise prejudiced" as dispositive.[7]

In reviewing the caselaw, the Court has identified few cases in which courts have held that union members have been misled or prejudiced by inadequate disciplinary charges. Furthermore, any such cases the Court has identified are, in the Court's view,

---

[7] See, e.g., Dille v. Williamson, 852 F.2d 1287 (6th Cir. 1988) ("Nonetheless, in order to prevail on a claim that union rules are vague or overbroad, the disciplined member must present evidence that he was misled or otherwise prejudiced in preparing his defense."); Johnson, 182 F.3d at 1076 ("Upon finding charges to be insufficiently specific, some courts require the disciplined member to 'demonstrate that he was misled or otherwise prejudiced in the presentation of his defense' to establish a violation of § 411(a)(5)."); Frye, 767 F.2d at 1223 (7th Cir. 1985) ("However, to establish a violation of 101(a)(5)(A), a disciplined member must demonstrate that he was misled or otherwise prejudiced in the presentation of his defense.").

extreme examples of a lack of notice.[8]   Accordingly, Mr. Knight

faces a difficult burden in attempting to establish that he was

not presented with adequate notice of the charges in advance of

his second disciplinary hearing.

## C. Parties' Contentions

The contentions and arguments presented by the parties far

exceed the scope of the instant issue.  The parties, and

specifically the ILA, spend significant effort discussing the

right of a union to discipline its members outside the scope of

its own rules.  At this point in the litigation, the issue of

what grounds the ILA could have used to discipline Mr. Knight is

immaterial.  The remaining issue is limited to whether the ILA

actually charged Mr. Knight with the misconduct for which he was

---

[8] See, e.g., Waring v. International Longshoremen's Asso.,
Local 1414, 653 F. Supp. 374, 379 (S.D. Ga. 1986) ("The
typographical error made it unclear what provision of the
international constitution, if any, was applicable to his
behavior, and it would have taken a commendable degree of
foresight for the plaintiff to have determined that his conduct
might subject him to charges under the international constitution
of 'illegal use of name.'"); Allen v. International Alliance of
Theatrical, etc., 338 F.2d 309, 315 (5th Cir. 1964) ("Fair play
entitles an accused to rely on the written charge made against
him in preparing his defense, limits the trial to proof in
support of that charge, and bars his being found guilty of an
offense with which he is not charged."); Johnson, 182 F.3d at
1075 ("Although these allegations make an overarching charge of
misconduct, they lack any factual detail that would give Fontana
notice of the specific actions he had to defend."); Strom v.
National Asso. of Basketball Referees, 564 F. Supp. 250, 254
(E.D. Pa. 1983) ("Because the letter was vague as to the conduct
being charged, even when considered in the context of the events
that transpired, it was inadequate as 'written specific charges'
under the LMRDA.").

found guilty. Thus, the Court's evaluation of the parties' arguments will be limited to that issue.

Mr. Knight contends that the ILA's pre-hearing submission did not provide adequate written notice of the charge for which Mr. Knight was found guilty. (D.I. 178.) Mr. Knight argues that the pre-hearing submission failed to provide any notice that he was charged with violating the "spirit and intent" of § 302(b) of the LMRA because the submission did not go beyond the actual statutory section and because the submission was not formatted as a charging document but as briefing. (Id.) To support this contention, Mr. Knight references the text of the submission, the arbitration decision by Mr. Mollen, and an e-mail exchange between the attorneys representing the parties. (Id.) Lastly, Mr. Knight argues that, even though it is not necessary to show prejudice, he was misled and prejudiced by the failure to properly charge him with the misconduct for which he was convicted, because the lack of notice directly impacted the manner in which he presented his case to Mr. Mollen. (Id.)

In response, the ILA argues that the pre-hearing submission did not need to specifically set out the charge for which Mr. Knight was convicted, because it provided sufficient notice that Mr. Knight's actions were detrimental to the ILA. (D.I. 181.) The ILA contends that its pre-hearing submission did not limit the charges to § 302(b), but clearly stated that accepting money

15

in the manner in which Mr. Knight accepted it was conduct

detrimental to the organization, and thus subject to discipline.

(Id.) Furthermore, the ILA contends that Mr. Knight has long had

notice of the scope of the charges at issue, including a charge

of detrimental conduct through receipt of the $500 because those

issues have been addressed throughout this protracted litigation.

(Id.) Lastly, the ILA contends that Mr. Knight places too much

emphasis on the phrase "spirit and intent," which it argues was

not a key factor in Mr. Mollen's decision. (Id.)

## D. Decision

Ultimately, there are three categories of facts relevant to

the Court's decision, the format of the pre-hearing submission,

the 2007 e-mail exchange between the parties' counsel, and the

content of the pre-hearing submission, with the third category

being the most important to the Court's decision. Upon review of

the relevant facts, the Court concludes that the evidence

establishes that the ILA did not provide Mr. Knight with

sufficient notice of the misconduct for which he was found

guilty.

In reaching this conclusion, the Court finds that the pre-

hearing submission simply is not, on its face, a set of charges,

but is instead a pre-hearing brief filed "in support of

disciplinary charges." (D. Exh. 5 at 1.) Although this document

summarizes the positions the ILA ostensibly took during Mr.

16

Knight's second hearing, it includes no section clearly
identified as containing new charges.  Rather, it includes only a
"Preliminary Statement," a "Statement of Facts," an "Argument"
and a "Conclusion."  In the Court's view, the fact that the ILA
failed to format the pre-hearing submission as an actual charging
document requires the pre-hearing submission to have an increased
degree of clarity regarding new charges if the pre-hearing
submission is to be considered as providing adequate notice to
Mr. Knight.  In a document that does not, on its face, purport to
be a charging document, the Court concludes that such heightened
clarity is necessary to meet due process standards that written
charges be specific enough to inform the accused of the offense
he has allegedly committed.  See Int'l Brotherhood of
Boilermakers v. Hardeman, 401 U.S. 233, 245 (1971) (providing
standard on specificity).

Second, in an e-mail exchange negotiating procedural issues
in advance of Mr. Knight's second hearing, counsel for Mr. Knight
stated to counsel for the ILA: "I assume the charges against
Knight would be the same ones originally filed against him by
Paylor, except for the charge based on Art. XXVII, which is no
longer valid."  (D.I. 146 Ex. 1.)  Counsel for the ILA responded
that "[t]he charges to be considered will not be based on Article
XXVII."  (Id.)  Mr. Knight contends that this e-mail exchange
confirmed his assumption that the charges would be those

17

previously addressed.  (D.I. 178 at 9.)  In response, the ILA

contends that Mr. Knight had no grounds to make such an

assumption because the e-mail from the ILA's counsel did not

confirm the assumption set forth by Mr. Knight's counsel and used

the future tense to indicate that new charges would be brought.

In the Court's view, the aforementioned e-mail exchange

provided adequate grounds for Mr. Knight to reasonably assume

that unless new charges were expressly provided to him, the

second disciplinary hearing would concern the previous charges.

The ILA's statement that the "charges to be considered will not

be based on Article XXVII" does not correct Mr. Knight's

assumption.  The use of the future tense in that statement does

not distinguish between new charges at the future hearing as

opposed to the existing charges at the future hearing.  Thus, the

Court finds the responsive e-mail statement from the ILA to be,

at best, ambiguous in its meaning, and therefore, the Court

concludes that this e-mail could reasonably have misled Mr.

Knight in the preparation of his defense.

In addition to this evidence, the Court is further persuaded

that the content of the pre-hearing submission demonstrates that

Mr. Knight was not provided with adequate notice that he would be

charged with violating the "spirit and intent" of § 302(b).  The

opening sentence of the Argument section of the pre-hearing

submission states:  "Knight's acceptance of money from an ILA

18

employer warrants discipline because, as the financial secretary
of Local 1694, Knight knew or should have known that his actions
violated Section 302(b) of the LMRA, and that he was exposing
himself and his local to liability." (D. Exh. 5 at 6.) Although
this statement raises the issue of a § 302(b) violation, it does
not charge Mr. Knight with violating § 302(b) in any manner
outside the actual text of the statute. In light of Mr. Mollen's
decision, this point is particularly significant, because Mr.
Mollen concluded that an actual violation of § 302(b) is distinct
from a violation of the "spirit and intent" of § 302(b). Indeed,
Mr. Mollen exonerated Mr. Knight of violating the text of §
302(b), but found him guilty of violating "the spirit and intent"
of § 302(b). If the ILA tribunal is going to distinguish between
§ 302(b), which applies only to private employers, and the
"spirit and intent" of § 302(b), which apparently does not, the
Court concludes that it is not reasonable for the ILA to make
this distinction for first time after Mr. Knight had already had
his hearing.

To the extent Mr. Knight responded to an alleged violation
of § 302(b) of the LMRA, Mr. Knight based his defense on the
theory that § 302(b) applies only to private employers and not to
government employers. Mr. Mollen held that this defense was
insufficient with regard to a violation of the "spirit and
intent" of § 302(b). Thus, to the extent Mr. Knight was not told

19

in advance that the alleged "conduct detrimental to the ILA" was a violation of the "spirit and intent" of § 302(b), the Court concludes that Mr. Knight was not provided with adequate notice of the charge. Additionally, the Court concludes that this lack of noticed prejudiced Mr. Knight because he did not know what defenses to raise, and in fact, Mr. Knight only addressed a § 302(b) charge to the extent that charge was based on the text of the statute. As the Court previously noted, "it would have taken unusual foresight for Mr. Knight to predict that the ILA tribunal would disregard the fact that, for the purposes of the LMRA, the term 'employer' does not include any State or political subdivision thereof, 29 U.S.C. § 152(2), and instead hold that this aspect of the statute pertains only to mere 'technical' violations of section 302(b)." Knight v. Int'l Longshoremen's Ass'n, 639 F. Supp. 2d 437, 447 (D. Del. 2009).

In addition to its previous arguments concerning the nature and content of the charge, the ILA also urges the Court to construe Mr. Mollen's decision as convicting Mr. Knight of conduct detrimental to the ILA, which Mr. Knight was charged with, and not with violating § 302(b) in any sense. (D.I. 181.) In making this argument, the ILA directs the Court to the Award section of Mr. Mollen's opinion which states that the prior decision was reasonable under the conduct detrimental disciplinary policy. (Id. at 13.) While the ILA is correct that

Mr. Mollen's Award section does not contain the words "spirit and intent," the Court is not persuaded that the absence of the "spirit and intent" language in the Award section detracts from Mr. Mollen's principal holdings. As the Court concluded in the context of Summary Judgment, and now affirms, Mr. Mollen's decision did, in fact, conclude that Mr. Knight was guilty of violating the spirit and intent of § 302(b). Immediately above the Award section, Mr. Mollen states in the Conclusion: "At the time Mr. Knight's original hearing occurred, it was reasonable for the ILA to conclude that Mr. Knight violated the spirit and intent of § 302(b) and to direct the return of the money." (D. Exh. 11 at 7.) Thus, the characterization of the ILA's prior action as "reasonable" in the Award section is prefaced with a definition of reasonable that expressly implicates the spirit and intent of § 302(b). Accordingly, the Court is not persuaded by the ILA's attempt to recharacterize or mischaracterize Mr. Mollen's decision.

Because the Court concludes that Mr. Mollen's decision was based on a violation of the spirit and intent of § 302(b) and such a violation was not adequately charged in the pre-hearing submission, the Court concludes that it is unnecessary to evaluate whether a general conduct detrimental charge was adequately made in the pre-hearing submission. See supra. Furthermore, based on the foregoing, the Court concludes that a

21

general charge of conduct detrimental cannot be specific enough to encompass a charge of violating the spirit and intent of § 302(b). In the Court's view, such a general charge does not provide the necessary specificity about the nature of a charge under the spirit and intent of § 302(b) to have provided Mr. Knight with the required information to prepare his defense. See Berg v. Watson, 417 F. Supp. 806, 810 (S.D.N.Y. 1976)(noting the case specific evaluation of the level of specificity required to provide information on the nature of the charged offense).

Thus, the Court concludes that Mr. Knight was convicted of violating the "spirit and intent" of § 302(b) but that he was never charged with that misconduct. Although the Court need not find that this lack of adequate notice prejudiced Mr. Knight, the Court finds that, in the circumstances of this case, Mr. Knight was in fact prejudiced. Mr. Knight argues, and his pre-hearing submission supports his argument, that he addressed the charge that he violated § 302(b) primarily through the argument that he did not technically violate the rule. (See D. Exh. 6.) It is clear that if Mr. Knight had been charged with violating § 302(b) in a sense broader than the language or text of the statute, he would have presented different or additional arguments. Thus, the Court is persuaded that the evidence demonstrates that the lack of notice provided to Mr. Knight of the charge for which he was ultimately convicted deprived him of an adequate opportunity

22

to prepare a defense. Accordingly, the Court concludes that Mr.
Knight has demonstrated that the ILA violated his due process
rights under LMRDA § 101(a)(5).

## III. DAMAGES

Having concluded that Mr. Knight's due process rights under
LMRDA § 101(a)(5) were violated, the Court must next consider
whether, and to what extent, damages should be awarded to Mr.
Knight. Under LMRDA § 101(a)(5), a violation of a union member's
protected rights has the potential to give rise to the ability to
seek damages. "For a violation of § 101 LMRDA rights, recovery
may include, in an appropriate case, damages for stigmatization,
loss of earnings, and physical and emotional distress. Punitive
damages are potentially available, as are attorney's fees."
Bollitier v. International Brotherhood of Teamsters, etc., 735 F.
Supp. 612, 620 (D.N.J. 1989); see also 29 U.S.C. § 412. The
ability to recover such damages are limited to "recovery of
damages which directly and proximately result from any alleged
violation of the LMRDA." Bollitier, 735 F. Supp. at 620
(internal citation omitted.)

Mr. Knight and the other Plaintiffs seek both compensatory
and punitive damages as a result of the ILA's conduct.
Accordingly, the Court will address each type of damages sought
in turn.

23

## A. Compensatory Damages

Mr. Knight contends that he is entitled to compensatory damages in three areas: (1) damage to his reputation and emotional distress, (2) damages from the imposition of an improper fine and lost pay, and (3) those damages that would be due to all Plaintiffs as a result of this action. The Court will also consider each of these categories of damages separately.

### 1. Reputational Damage And Emotional Distress

#### a. Legal Standard

The parties dispute the appropriate legal standard in evaluating emotional distress and damage to one's reputation in the context of LMRDA. Specifically, the parties dispute whether or not such damages require evidence of actual harm. While not all federal courts agree, there is a clear majority rule that proof of actual harm is required to establish damages for emotional distress under LMRDA. See Guarnieri v. Pa. Fed'n. Bhd. of Maint. of Way Emples., 153 F. Supp. 2d 736, 747 (E.D. Pa. 2001) (citing Rodonich v. House Wreckers Union, 817 F.2d 967 (2d Cir. 1987; Bradford v. Textile Workers of America, 563 F.2d 1138 (4th Cir. 1977); Bise v. International Bhd. of Elec. Workers, AFL-CIO Local 1969, 618 F.2d 1299 (9th Cir. 1979); Glover v. Ossey, No. 93 C 0421, 1995 U.S. Dist. LEXIS 8608, *28 (N.D. Ill. June 19, 1995)). Within that majority rule, there is some dispute as to whether actual injury requires actual physical harm

24

or whether some other form of harm is sufficient.[9]

The Court agrees with the rationale espoused by the Eastern District of Pennsylvania in Guanieri and follows the majority rule that a plaintiff must demonstrate some actual injury in order to recover damages for reputational or emotional injury under LMRDA. Additionally, the Court agrees with the Ninth Circuit and the Northern District of Illinois that the actual harm required to demonstrate such injury can go beyond physical injury if the additional sources of actual harm are sufficient to protect against "spurious or excessive claims." See Glover, 1995 U.S. Dist. LEXIS 8608 at *29; see also Bise, 618 F.2d 1299. The Court notes that while physical injury is the most likely method of demonstrating actual harm, a plaintiff may demonstrate actual harm by showing that emotional or reputational damage was manifested through other actual harm. In addition to the actual harm requirement, a plaintiff must necessarily demonstrate the general causation requirement applicable to all damages under LMRDA.

### b. Parties' Contentions

Mr. Knight contends that he is entitled to compensatory damages in the sum of $100,000 due to injury he sustained to his

---

[9] The Third Circuit has addressed this issue only in dicta, but did note that: "Emotional distress, standing alone, has been held not to constitute sufficient basis for awarding damages." Gartner v. Soloner, 384 F.2d 348, 352 (3d Cir. 1967).

reputation and due to emotional distress as a direct result of the ILA's violation of his due process rights under LMRDA. (D.I. 178 at 14.) He argues that his improper conviction, which the Court has recognized due to his failure to be properly charged by the ILA, is a very serious harm within the union context, and therefore, a significant award is warranted. Mr. Knight contends that his improper conviction seriously damaged his reputation within the ILA, and his community more generally. (Id. at 16-20.) Mr. Knight offered the testimony of several witnesses, as well as his own testimony, that union members thought less of him as a result of the charge of improperly taking money from an employer and his subsequent conviction for that charge. (Id.) Furthermore, Mr. Knight contends that the reputational damage he suffered, the mocking, and the accusations that he was a communist, which stemmed from the improper conviction, caused him emotional distress. (Id. at 20-22.) He further states that the emotional distress led to him generally to feeling low and having difficulty sleeping. (Id. at 21, D.I. 182 at 15-16.)

In response, the ILA contends that Mr. Knight does not have any compensable injury resulting from emotional distress or damage to his reputation. (D.I. 181 at 22.) The ILA contends that Mr. Knight has failed to show the necessary causation between any LMRDA violation and the argued injuries, and that he has not demonstrated any actual harm. (Id.) Concerning

causation, the ILA asserts that there were a number of factors, such as poor performance as financial secretary, the stigma of being a union officer, and an embezzlement charge, that contributed to Mr. Knight's poor reputation; and thus it is not clear that any action of the ILA was the direct or proximate cause of the alleged damages. (Id. at 27-30.) Additionally, the ILA argues that it cannot be shown that Mr. Knight's reputation was truly harmed because, although he lost the 2002 election for financial secretary, he finished a close second in a three person race and was successful in several other union elections. (Id.) Furthermore, the ILA contends that the emotional distress Mr. Knight asserts due to being labeled a communist cannot be connected to the ILA, as nothing in the disciplinary process or charges had any reference to communism. (Id. at 38-40.) Lastly, the ILA contends that there is no evidence of any actual harm to Mr. Knight caused by the alleged emotional injuries he sustained.

### c. Decision

As noted above, a plaintiff must demonstrate actual harm and causation to be entitled to damages for emotional or reputational harm in connection with a LMRDA violation. In the Court's view, however, Mr. Knight has not established either causation or actual harm by a preponderance of the evidence so as to justify an award of compensatory damages. Regarding causation, Mr.

27

Knight has not established that his emotional and reputational damages are the direct or proximate cause of the ILA's LMRDA violation. At the time in question, Mr. Knight was subject to multiple circumstances that impacted his emotional well-being and reputation. (See D.I. 176.) Although Mr. Knight contends that his good name was sullied by the ILA's improper charge and conviction, it is clear that there were other contemporaneous events that may have played a role. Mr. Knight faced other union charges relating to an accusation of embezzlement, criticism of his competency to serve as financial secretary in light of Local 1694 going into significant arrears during his term in office, and his participation in the Workers Coalition, a group that was not viewed positively by all ILA members. The evidence demonstrates that all of these factors functioned independently of the ILA's violation in creating controversy and impacting Mr. Knight's reputation and emotional standing. Furthermore, it is not clear to what extent Mr. Knight's reputation was damaged in light of his subsequent successes with the union and the fact that some in the union may have increased their positive opinion of Mr. Knight in light of his confrontations with the ILA.

In addition, the Court concludes that comments made by union members concerning Mr. Knight's supposed affiliation with communism cannot be proximately connected to the ILA's disciplinary action against Mr. Knight. While several high

28

ranking members of the ILA discussed their belief that the Workers Coalition was a communist organization, nothing in the disciplinary record contains any insinuation that the action taken by the ILA was related to a charge of communism against Mr. Knight. Tellingly, the testimony of Ronald Harris, which was relied upon by Plaintiff, distinguishes between the conduct subject to discipline and any communist reference in the daily conversations of union members. (D.I. 176 at 117:6-10.) Mr. Harris stated: "it was like a daily conversation in the Union Hall that Knight had got caught taking some money from one of the employers. He had used some union money to finance a meeting of the Coalition which was a communist organization."[10] (Id.) This testimony shows that while communism may have been part of the conversation around Mr. Knight, union members did not connect it with the discipline at issue, but rather, viewed it as a separate point of interest concerning Mr. Knight and the Workers Coalition.

In sum, the Court concludes that the evidence presented by Mr. Knight is insufficient to prove, by a preponderance of the evidence, that the ILA's violation caused, even tangentially, the damages or even a portion of the damages claimed by Mr. Knight.

---

[10] In citing this passage of testimony, Mr. Knight disingenuously omitted the portion of the passage that stated that the financing came from union money, and thus combined the sentences to imply that the charge against Mr. Knight was for taking money to support communism.

While it is clear that Mr. Knight was upset by the happenings at Local 1694 during the time in question, the evidence presented is insufficient to establish that the ILA's misconduct was the catalyst for his emotional state and reputation. Additionally, even if the Court were to conclude that causation was established, Mr. Knight has not provided means of evaluating the proper figure to represent his alleged damages or any way to divide the harm caused by the ILA from the other factors that appear to have contributed to any emotional distress or damaged reputation within the union membership.

In addition to the Court's conclusion that Mr. Knight did not establish a causal link, the Court also concludes that Mr. Knight has not adduced sufficient evidence of actual injury to warrant an award of damages for emotional and reputational damage. The evidence Mr. Knight did present concerning actual harm to him is his testimony that he experienced difficulty sleeping.[11] (D.I. 176 at 24:24.)

The entirety of Mr. Knight's testimony on his loss of sleep at the December 14, 2009, Damages Hearing is as follows:

Q. Did it affect you physically in any way?
A. Well, I lost a lot of sleep.

---

[11] Loss of sleep can be used to demonstrate actual physical injury. See Petramale v. Local No. 17 of Laborers' International Union, 847 F.2d 1009, 1013 (2d Cir. 1988); Glover, 1995 U.S. Dist. LEXIS 8608 at *30. Additionally, evidence of actual injury "may be established by [a plaintiff's] own testimony." Guarnieri, 153 F. Supp. 2d at 747.

(D.I. 176 at 24:23-24.) However, Mr. Knight did not seek any
medical treatment for his loss of sleep (Id. at 97:24-98:3), nor
did he provide any context or measure for the significance of the
sleep he asserts he lost. Therefore, in the Court's view, this
limited testimony is insufficient to establish that Mr. Knight's
loss of sleep amounted to a cognizable physical injury. On this
record, the Court concludes that Mr. Knight's lost sleep does not
demonstrate a physical manifestation sufficient to support the
claim of emotional distress. This conclusion is comparable to
Petramale where the Second Circuit concluded that similar limited
and undocumented testimony on sleep loss warranted a significant
reduction in compensatory damages due to the plaintiff from other
demonstrable injury. Petramale, 847 F.2d at 1013. In sum, based
on the lack of record evidence adduced at the December 14, 2009
hearing, the Court must deny Mr. Knight's request for
compensatory damages based on reputational harm and emotional
distress.

### 2. Fine Charged To Mr. Knight and Lost Income

Mr. Knight also seeks compensatory damages from the ILA for
the $500 fine he was charged as a result of the disciplinary
proceedings and for income he contends he lost as a result of the
ILA's violation of LMRDA. (D.I. 178 at 27.) With respect to
lost income, Mr. Knight advances several sources of lost income,
including: (1) lost income resulting from his six month

31

suspension from his position as financial secretary, (2) lost income from lost days of work, and (3) lost income resulting from his loss in the 2002 election for financial secretary. Such claims are permissible under LMRDA so long as a plaintiff can demonstrate direct or proximate cause by a preponderance of the evidence. Bollitier v. International Brotherhood of Teamsters, etc., 735 F. Supp. 612, 620 (D.N.J. 1989). The Court will address each of Mr. Knight's arguments in turn.

## a. $500 Fine

Mr. Knight contends that he is entitled to $500 from the ILA as repayment for the fine in the same amount that was he improperly charged at the first disciplinary hearing and which was upheld at the second disciplinary hearing. (D.I. 178 at 27.) The ILA contends that the fine was not improper because any ILA disciplinary panel would have required Mr. Knight to repay the $500 he accepted from Mr. McBride. (D.I. 181 at 43.)

In light of the Court's conclusion that the ILA violated Mr. Knight's rights under LMRDA, see supra, and its prior decision that the lengthy history of this litigation makes any additional disciplinary hearings improper, see Knight v. Int'l Longshoremen's Ass'n, 639 F. Supp. 2d 437, 446 (D. Del. 2009), the Court concludes that Mr. Knight's request for compensation in the amount of the fine he was charged is appropriate. Because the disciplinary hearings were improper, the fine resulting from

32

them was improper as well. Thus, the Court concludes that Mr. Knight must be awarded $500.

## b. Lost Income: Six Month Suspension

Next, Mr. Knight contends that he is entitled to $9,495 in lost income that resulted from his suspension from the office of financial secretary for six months after the first disciplinary hearing. (D.I. 178 at 27.) Before the instant action was reviewed by the Third Circuit, the Court concluded that Mr. Knight's removal from office did not constitute discipline under the LMRDA. Knight v. Int'l Longshoremen's Ass'n, 286 F. Supp. 2d 360, 365 (D. Del. 2003). Because the Court's prior holding eliminated Mr. Knight's opportunity to seek damages for this suspension, Mr. Knight requests the Court to alter its previous decision in light of the Third Circuit's decision. (D.I. 178 at 27.) Mr. Knight points out that the Third Circuit concluded that the free speech restrictions of Section XXVII of the ILA Constitution should have been considered by the Court. Thus, Mr. Knight contends that the Court should reconsider the issue pertaining to removal of a union officer consistent with the case of Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347 (1989), rather than under the case used by the Court in its previous decision, Finnegan v. Leu, 456 U.S. 431, 437 (1982). (D.I. 178 at 27-28.)

In response, the ILA contends that damages cannot be awarded

33

for lost wages during Mr. Knight's suspension because the issue
has already been decided.  The ILA further contends that the
Third Circuit's decision did not significantly impact the Court's
prior decision on the suspension issue.  (D.I. 181 at 43-44.)

     The facts surrounding Mr. Knight's suspension indicate that
the suspension was imposed solely based upon his receipt of money
from Mr. McBride and was not related to any free speech actions.
This is clear because Mr. Knight alone was found liable for
improperly soliciting funds at the first disciplinary hearing,
but Mr. Knight and Mr. Miller-Bey were both cited for violating
Section XXVII of the ILA Constitution.  Despite that finding,
only Mr. Knight was punished.  That Mr. Knight was punished
indicates that the ILA's action of suspending Mr. Knight was
based on his collection of money and not related to his use of
the ILA name and initials, as Mr. Miller-Bey was not punished for
the same conduct.  The Court's conclusion regarding this issue is
consistent with the Third Circuit's ruling because that ruling
did not conclude that Mr. Knight was punished for violating
Section XXVII of the ILA constitution, but that Section XXVII
chilled the free speech rights of union members.  In sum, the
Court concludes that reconsideration of the Court's prior
decision on Mr. Knight's six month suspension is not warranted,
and therefore, damages in the form of loss of income for that
suspension will not be awarded.

### c. Lost Income: Lost Days Of Work

Lost earnings are available as a remedy for a LMRDA
violation, Kuebler v. Cleveland Lithographers & Photoengravers
Union, 473 F.2d 359, 364 (6th Cir. 1973); however, the potential
award is reduced through successful mitigation and neglected
mitigation opportunities. Magelssen v. Operative Plasterers &
Cement Masons' International Asso., 240 F. Supp. 259 (W.D. Mo.
1965). In the instant action, Mr. Knight contends that he is
entitled to $12,100 in lost income for the 50-60 days of work he
missed as a result of the ILA's LMRDA violation. (D.I. 178 at
29.)

Mr. Knight contends that he missed 50-60 days of work
between approximately July 2000 and June 2001. (Id.) He
contends that this lost work was a direct result of the ILA's
LMRDA violation and was manifested through a combination of
emotional distress and the refusal of foremen to hire him when
his work gang was not working. (Id.) Regarding emotional
distress, Mr. Knight argues that the previously discussed
emotional distress he suffered discouraged him and led to him
choosing not to work on many days. (Id. at 29-30.) Concerning
the refusal of foremen to hire, Mr. Knight contends that at the
time in question the system used by foremen to select extra
workers was highly discretionary and that many foreman chose not
to hire him as a result of his improper conviction. (Id. at 29.)

In response, the ILA contends, as a threshold matter, that Mr. Knight did not address the issue of lost work opportunities at the first trial before the Court, and therefore, Mr. Knight should not be able to raise it now. (D.I. 181 at 44.) (Id.) Alternatively, the ILA contends that Mr. Knight cannot establish that his lost work days are causally connected to the ILA's LMRDA violation.  (Id.)  In this regard, the ILA points out that Mr. Knight did not lose any work hours from year to year during the time in question, noting that his hours actually increased during the time he was suspended from his position as financial secretary.  (Id. at 44-45.)  The ILA also contends that the hiring system at the time was extremely discretionary both in a union member's decision whether or not to seek work and in a foreman's decision to hire.  Because there are numerous possible reasons why Mr. Knight was not hired, the ILA contends that Mr. Knight cannot establish the required causation.  (Id. at 45.)  In addition, the ILA contends that Mr. Knight was able to completely mitigate any lost hours through opportunities he would not have received had he not been suspended, like the chance to work as an assistant foreman and receive an increased wage at times.  (Id.)

In reply, Mr. Knight argues that the fact that his hours remained consistent is not dispositive because he would have had the opportunity to work more and thus had even more hours if his rights had not been violated.  (D.I. 184 at 18.)

In the Court's view, damages for lost wages concerning lost days of work are not warranted in this action because the asserted lost pay has not been shown to be directly or proximately caused by the ILA's LMRDA violation. The amount of work Mr. Knight missed in the relevant time period is not provided with any evidentiary support beside Mr. Knight's testimony, which is an estimate. (See D.I. 176 at 28:17.) There are no records, schedules, or any other evidence presented to support Mr. Knight's estimate on the number of days of work he missed. Additionally, there is no indication as to how many days Mr. Knight missed as a result of not being hired compared to days in which he chose not to work. The lack of evidence presented by Mr. Knight here distinguishes this case from others like Magelssen. 240 F. Supp. at 262 (awarding lost wages where there was evidence of the specific dates between which the plaintiff did not work). In the Court's view, the lack of supporting evidence pertaining to Mr. Knight's alleged lost work days is significant in this case given that the annual hours worked by Mr. Knight remained consistent before, during, and after the period in question. (D. Exh. 23.) Thus, the Court concludes that the evidence is insufficient and speculative as to both the amount of work Mr. Knight missed and the question of whether that missed work was causally related to the ILA's violation. Accordingly, the Court declines to award compensatory damages to

Mr. Knight based on lost income.

To the extent Mr. Knight attempts to link his lost days of work to the emotional distress he suffered, the Court has concluded that Mr. Knight has not established causation with regard to his emotional distress claim. Indeed, Mr. Knight's testimony suggests that he declined work for numerous reasons. (D.I. 176 at 12:11-19.) Because the causal link is lacking with regard to emotional distress, the Court concludes that Mr. Knight cannot demonstrate that he is entitled to compensation for missed days of work due to emotional distress.

As for the hiring practices of the foremen and their nexus to lost income for Mr. Knight, the Court concludes that Mr. Knight has failed to establish that these decisions were directly or proximately caused by the ILA's violation of LMRDA. As Mr. Knight explained, the hiring system at the time in question was subject to almost unlimited discretion by the hiring foreman. (D.I. 176 at 26:4-11.) Such discretion makes it difficult to pinpoint any specific motivation for any individual foreman's decision. Additionally, there are many reasons why a foreman may or may not hire an individual union member, and there is a lack of evidence from any foreman as to why he or she made any hiring decisions. While Mr. Knight testified that foremen chose not to hire him based on his conviction (D.I. 176 at 12:7-10), his testimony is inconsistent concerning the times he was denied work

and the rationale he was given for not being hired.
Specifically, Mr. Knight's testimony indicates that, at times
during the relevant time period, he was given jobs by other
foremen based on the fact that the foreman of Mr. Knight's gang
was in charge of a certain ship.  (D.I. 176 at 31:16-19.)  In the
Court's view, this evidence further demonstrates that a variety
of motivations precipitated the actions of the foremen regarding
hiring, and that a determination regarding causation would
require the Court to speculate on multiple individuals'
motivations.  Accordingly, the Court concludes that Mr. Knight
has not established that he is entitled to lost wages based on
the hiring decisions of the foremen being linked in any manner to
the ILA's LMRDA violation.

### d. Lost Income: Lost Election

Mr. Knight also contends that he is entitled to lost income
due to his loss in the 2002 elections.  According to Mr. Knight,
he would have won the 2002 election for financial secretary, but
for the ILA's LMRDA violation.  (D.I. 178 at 30.)  Mr. Knight
contends that the race was particularly close, and that his
conviction led many members to vote against him.[12]  In support of

---

[12] Mr. Knight, along with Ron Farrell and Gus Elze, ran for
financial secretary of Local 1649 in 2002.  Mr. Farrell won the
election with 54 votes, Mr. Knight received 49 votes, and Mr.
Elze received 46 votes.  (P. Exh. 4.)  The election was later
voided by the Department of Labor, and Mr. Knight did not run in
the re-election held in 2003.

39

his contention, Mr. Knight points to Gary Lewis, who would have switched his vote but for the conviction. Mr. Knight contends that the Court may properly infer from Mr. Lewis' conduct and the election results, that others were negatively influenced against Mr. Knight. (Id. at 30-33.)

In response, the ILA contends that there are no grounds to award lost income related to the 2002 financial secretary election because an award of damages for the loss of this position would be purely speculative. (D.I. 181 at 45-47.) Specifically, the ILA contends that the potential outcome of the 2002 election, in the absence of the LMRDA violation, cannot be determined with any certainty because there were multiple sources for negative opinions of Mr. Knight, including his poor performance as financial secretary, the strengths of his two opponents, and the fact that Mr. Knight admitted to accepting money from Mr. McBride. (Id.) Additionally, the ILA points out that Mr. Knight did not run in the election held after the 2002 election was voided, which further heightens the speculative nature of any claim Mr. Knight asserts that he did not win the election because of the ILA's violation. (Id. at 46-47.)

A district court may evaluate claims based on a lost union election and may determine that a plaintiff is entitled to compensation if he would have won the election absent a violation by the union. Tusino v. Int'l Bhd. of Teamsters, 169 Fed. Appx.

39, 43 (2d Cir. 2006). However, the Court cannot conclude that Mr. Knight has established by a preponderance of the evidence that he would have won the 2002 election absent the ILA's LMRDA violation. The Court agrees with the ILA that too many variables exist to make an reasonable inference that Mr. Knight would have won the 2002 election but for the ILA's violation. The fact that the election was close does not establish by a preponderance that Mr. Knight would have won, and as discussed previously, there were a number of factors that led to criticism of Mr. Knight, including his prior performance as financial secretary. Furthermore, the 2002 election was a three person race in which each candidate received a substantial number of votes, and there is no reasonable method for the Court to determine how those votes would have been distributed under different circumstances. Accordingly, the Court concludes that Mr. Knight has not established a causal link between the ILA's violation and his failure to be re-elected to the financial secretary position, and therefore, the Court concludes that Mr. Knight is not entitled to damages on this claim.

### e. Conclusion

In sum, the Court concludes that Mr. Knight has not demonstrated that he is entitled to compensatory damages beyond the amount of damages he sustained in the improperly assessed fine. Accordingly, the Court will award Mr. Knight $500, an

amount equal to the fine he was charged through the disciplinary hearings that violated his rights under LMRDA.

### 3. Damages Concerning All Four Plaintiffs

In addition to Mr. Knight's individual claims for compensatory damages, Mr. Knight and the three other Plaintiffs, Mr. Miller-Bey, Mr. Eddie McBride, and Mr. Riley, contend that they are entitled to compensatory damages because Article XXVII of the ILA Constitution chilled their free speech rights. (D.I. 178 at 33.) Mr. Knight and Mr. Miller-Bey contend they should be awarded $20,000 each and Mr. Eddie McBride and Mr. Riley contend they should be awarded $10,000 each. (Id. at 36.) The basis of their claims is that Art. XXVII, which has been amended pursuant to the Court's order, had a chilling effect on their support of the Workers Coalition. (Id. at 33-36.) Additionally, the Plaintiffs contend that Mr. Miller-Bey was further chilled by Art. XXVII in the 1980s and the subsequent litigation. (Id. at 33-34.)

In response, the ILA contends that there is no basis for awarding damages to Plaintiffs, because they have not been injured in any way. (D.I. 181 at 47.) The ILA contends that, despite the contention of their free speech rights being chilled, Plaintiffs have been successful within the union and that the Workers Coalition has been successful as well. (Id.) Additionally, the ILA observes that the Workers Coalition is not

a party to this action.

The Court concludes that Plaintiffs have not demonstrated any compensable injury related to the chilling effect of Art. XXVII. The harm Plaintiffs allege is that the Workers Coalition has not been as successful as it could have been. In the Court's view, the claimed harm is speculative and does not establish injury to Plaintiffs. Plaintiffs have not provided evidence that supports their claims to the amount of damage sought. Further, the fact that Mr. Miller-Bey was involved in previous litigation with the ILA, does not support a finding of actual harm caused by Art. XXVII in this case. Therefore, the Court will not award Plaintiffs damages based on the alleged chilling effects Art. XXVII had on Plaintiffs' speech.

## B. Punitive Damages

Punitive damages are also potentially available under LMRDA.[13] See supra; see also Estenich v. Heenan, 878 F. Supp. 43, 46 (E.D. Pa. 1995). Specifically, courts allow punitive damages where there is actual malice or reckless indifference to the rights of a plaintiff. Sipe v. United Brotherhood of Carpenters & Joiners, 393 F. Supp. 865, 871 (M.D. Pa. 1975).

Mr. Knight, and the other Plaintiffs, contend that punitive

---

[13] While the issue has not been addressed by the Third Circuit, courts in this circuit have acted consistently with the majority of the country in concluding that punitive damages are available.

damages are warranted in the amount of \$250,000 because the ILA
acted with reckless indifference to their rights. (D.I. 178 at
42.) Plaintiffs provide a time-line of the events and contend
that the chronology indicates a pattern of reckless indifference
toward their rights. (Id.) Plaintiffs' chronology references
the prior litigation between Mr. Miller-Bey and the ILA. (Id. at
39 (citing Caldwell v. Int'l Longshoremen's Ass'n, Local 1694,
696 F. Supp. 132 (D. Del. 1988).) Plaintiffs add that a
substantial punitive award is warranted regardless of the amount
of any potential compensatory damages award because the need for
punishment is significant. (Id. at 44-45.)

     In response, the ILA contends that there are no grounds
supporting an award of punitive damages. (D.I. 181 at 49.) The
ILA argues that its conduct cannot reasonably be interpreted as
malice driven or reckless, but at most negligent. (Id.)
Additionally, the ILA contends that courts have noted that an
award of punitive damages in LMRDA litigation must be viewed with
caution because it has the potential to impinge the union's
ability to work for the benefit of its union members. (Id. at 56
(citing Quinn v. Di Giulian, 739 F.2d 637 (D.C. Cir. 1984).)

     After reviewing the record presented in this case, the Court
concludes that there is no evidence that the ILA acted with
reckless indifference, or malice, toward Plaintiffs' rights. The
Plaintiffs have not presented evidence sufficient to establish

that the ILA was malicious or recklessly indifferent in its actions with Plaintiffs. The ILA conducted disciplinary proceedings against Mr. Knight and imposed a fine against Mr. Knight for accepting a contribution from Mr. McBride. The record of evidence demonstrates that the ILA's conduct was motivated by its concern that the receipt of such a contribution was improper, and there is no suggestion that the ILA's motivations were otherwise. The record also suggests a concern by the ILA that Mr. Knight's conduct was inappropriate. See Building Material & Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 512 (9th Cir. 1989) (vacating a punitive damages award even though the union violated LMRDA procedural rights because the union was justified in investigating and attempting to punish perceived financial misconduct).

Plaintiffs direct the Court to their extensive time line of litigation with the ILA to support their contention that punitive damages are warranted. In the Court's view, however, the time line shows a contentious history between the parties, but not an overarching pattern of maliciousness or reckless indifference. In particular, the Court is not convinced that the fact Mr. Miller-Bey was involved in litigation with the ILA previously, on different claims and more than a decade before the instant litigation was initiated, supports a claim of reckless indifference on the part of the ILA in the instant dispute.

45

Accordingly, the Court concludes that Plaintiffs have not proven that they are entitled to punitive damages.

## C. Interest

Plaintiffs', and specifically Mr. Knight's, last request is for pre- and post-judgment interest on any damages given. (D.I. 178 at 36.) The ILA did not comment on the issue of interest. Based on the Court's conclusions above, the issue of interest concerns only the award of $500 to Mr. Knight.

Pursuant to 28 U.S.C. § 1961, the Court will award post-judgment interest to Mr. Knight. As for pre-judgment interest, the parties have insufficiently briefed the issue of pre-judgment interest for the Court to render a decision. This seems in part due to the parties' assumption that pre-judgment interest cannot be fully evaluated until the Court's decision on damages is issued. Accordingly, the Court will not award pre-judgment interest at this time; however, Mr. Knight may file a separate Motion and Brief addressing pre-judgment interest.

## IV. CONCLUSION

For the reasons discussed, the Court concludes that Mr. Knight's due process rights under LMRDA § 101(a)(5) were violated by the ILA's failure to properly charge him with the offense for which he was convicted, and that Mr. Knight is entitled to compensatory damages in the amount of $500 plus appropriate post-judgment interest.

An order will be entered.